**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Larry D. Thomas | CASE NO09-CV-0443.- LJO |
| Plaintiff, | ORDER OF CONTEMPT |
| vs. | ORDER OF DISMISSAL |
| Hector Robles, J. Negrete, H. Smith, J. Garza, L. Lozano, T. Reyna, C. Horton, M. Alvarez, S. Wilson, and B. Teesdale | |
| Defendants. / | |

FACTUAL BASIS

On December 13, 2011, the above-captioned matter came to the Court to commence a jury trial. Plaintiff Thomas, Pro Se, is a state prisoner in the custody of the California Department of Corrections and Rehabilitation, serving a life term for murder (only relevant to the issue of available effective remedies for the behavior below-described).

The plaintiff brought an action pursuant to 42 U.S.C. 1983, claiming both excessive force and failure to intervene. The ten captioned Defendants remained for the purpose of trial.

The jury was selected, , but as the trial progressed, the Plaintiff became progressively more annoyed with the requirements of the Federal Rules of Evidence, illustrating his frustration in the form of sneers directed at the Court. The Court ignored the sneers, except to use the actionable conduct to explain the rules, expecting the disrespectful conduct to subside as the rules were explained to the Plaintiff.

The Plaintiff then began to comment on the answers of witnesses, and then attempted to testify with prefaces before actually asking questions. He was admonished several times for this conduct, each

time resulting in lengthy, sneering glares directed at the Court.

The Plaintiff thereafter began to have significant periods of total silence between questions, some as long as 60 seconds. When this conduct first began, the Court first thought that the Plaintiff had completed questioning and asked whether or not he had other questions. Each time the Plaintiff responded that he did. On several occasions, the Court admonished the Plaintiff that he had to stop the lengthy and unexplained periods of silence between his questions, and needed to use the valuable time in the courtroom wisely. Each time, the Plaintiff responded with a further sneer, coupled with a loud and belligerent statement that he was doing the best he could. The conduct continued and became so disruptive due to the delays to the trial that, outside the presence of the jury, yet on the record, the Court explained that the Plaintiff was expected to have prepared for trial before the trial commenced, and that it was not permissible to prepare between questions. It was further explained that if the Plaintiff's tactics of simply sitting at counsel table silently while all in the courtroom waited for a question continued, that the Court would look to defense counsel and inquire whether or not he had any further questions, and thereafter that witness would be finished with testimony. The plaintiff attempted to excuse his conduct by claiming that the defendants were "lying" and his need to "get around the lies" was causing the delay.

After a recess was taken, a treating nurse was called as the last witness of the day. After a delay of an estimated minute between questions, the Court asked the Plaintiff "Anything else?". The Plaintiff looked up with a look of disdain for the Court, and said "Yes." He then looked away from the Court, followed by another lengthy period of silence. The Court then asked: "What's your next question, please?" There was no response to the Court's inquiry, followed by another lengthy pause of silence. The Court did what it had told the Plaintiff it would do, and asked the defense counsel if he had any questions of the witness. Counsel indicated that he did not, and the Court excused the witness.

It was at this point that the Plaintiff began his out-of-control behavior, escalating the volume of his voice, shaking his finger at the Court, and interrupting the Court as it attempted to regain control of

the courtroom. The Court told the Plaintiff that it was not going to argue with the Plaintiff, repeating the statement four times, but the Plaintiff would not stop his behavior. The jury was sent to the jury room so the matter could be taken care of outside of its presence. Once the jury left the courtroom, the Court began to explain to the Plaintiff in a calm, yet direct and firm manner that the Plaintiff was not running the courtroom, intending to explain to the Plaintiff what would happen if he continued with his contemptuous behavior. The Plaintiff was agitated, disrespectful and belligerent in demeanor, and would not allow the Court to finish its statements. When the Plaintiff shouted that he was "getting pissed off," and asked why the Court felt he should not be able to get "pissed off," the Court began to answer the question. Again, the Court was interrupted by the ranting of the Plaintiff, telling the Court that "You doing [sic] just fucking over me every kind of way you can."

The Court concluded that it would be futile to attempt to talk over the Plaintiff, or to attempt in any way to stop his contemptuous and out-of-control behavior. In considering remedies available to the Court for the immediate and ongoing and uncontrollable contemptuous behavior, it was clear that the ususal remedies available to a Court under the circumstances (such as a stern lecture, a monetary fine, a jail sentence and/or some sort of evidentiary preclusion) would all be without effect. The Plaintiff is currently serving a life term, and pursuant to the Plaintiff's testimony at trial, has been living in Administrative Segregation for several years.

The Court also concluded that to attempt to make a record at that time would be futile, and it would prepare the instant written order as soon as the transcript from the proceeding had been prepared (less than ½ day later).

The Court dismissed the case and asked that the Plaintiff be removed from the courtroom. As attempts were being made to remove the Plaintiff, he escalated his screaming as follows:

"Fuck all you faggot ass Mexicans and white motherfuckers. Fuck all you motherfuckers. Suck this black dick. That's how I feel. Yeah. That's for

everybody that called me a nigger and heard them call me a nigger. That's how I feel."

Turning to the correctional officer who he had punched in the face during the incident at the prison, causing a fracture of the orbit (eye socket), a fractured nose, and a torn rotator cuff of the shoulder, he yelled:

"I'm glad you got your bitch ass knocked out, Horace. Sorry motherfucker. You worked in the MTA for three years. You don't even know what a medical emergency is. Sorry motherfucker. Man, I never seen nobody so sorry in my life."

Turning then to the Court, he yelled:

"Fuck you, Judge. You bitch."

He was finally removed from the courtroom and returned to prison. The jury was brought back into the courtroom and they were discharged.

The above scenario describes the conduct that occurred in open court, on the record, during the jury trial in the above-captioned matter on December 13, 2011 that was both heard and seen by the undersigned, such conduct having been committed in the Court's presence. The Court so certifies. Because of the foregoing conduct, which obstructed and disrupted the court in its attempt at the administration of justice, the case was dismissed.

A court of the United States has the power to punish contempt of its authority by the misbehavior of a person in its presence that obstructs the administration of justice or by disobedience to the courts lawful order. 18 U.S.C. § 401. Courts also have inherent power to punish contempt of their authority. In re Terry, 128 U.S. 289, 302-303, 9 S. Ct. 77, 79 (1888). Where conduct occurs in the presence of the court that disrupts and frustrates an ongoing proceeding summary contempt is "available to vindicate the authority of the court." United States v. Wilson, 421 U.S. 309, 316, 95 S. Ct. 1802, 1806 (1975).

Conduct that obstructs the district court judge in the administration of his judicial duties may be punished, and where the conduct is wilful, it is punishable as criminal contempt. In re Gustafson, 650 F.2d 1017, 1020 (9th Cir. 1981).

The District Court "may summarily punish a person who commits criminal contempt in its presence if the judge saw or heard the contemptuous conduct." Fed. R. Crim. P. 42(b). Where the requirements of Rule 42(b) are satisfied the trial court has the discretion to invoke summary procedures. In re Gustafson, 650 F.2d at 1021. "This discretionary power is not to be exercised by the district court except in limited circumstances after dispassionate consideration.' Id. Rule 42(b) is to be applied where "the contemptor's conduct is such an open, serious threat to orderly procedure that instant and summary punishment, as distinguished from due and deliberate procedures is necessary." Id. at 1022 (internal punctuation and citations omitted).

Despite the Court's efforts to regain control of the proceedings, Plaintiff's refusal to stop arguing with the court left no alternative but to summarily punish in order to promote the judicial function. In re Gustafson, 650 F.2d at 1023.

Finally, as discussed above there are no alternative sanctions which are satisfactory. Monetary sanctions are not available given that Plaintiff is incarcerated and proceeding in forma pauperis, making the imposition of such sanctions of no consequence.

The case was dismissed due to the Plaintiff's out-of-control, contemptuous behavior.

IT IS SO ORDERED.

Dated:   **December 14, 2011**          /s/ Lawrence J. O'Neill
                                   UNITED STATES DISTRICT JUDGE